May it please the court, John Ballas on behalf of Marc Keyser, the appellant. I'm intending to reserve five minutes for rebuttal. This is a case about warnings, not a case about threats. Marc Keyser was convicted for a speech warning of the dangers of anthrax and the Department of Homeland Security's inability to protect the public. As Colin Powell did before the United Nations, Keyser used a prop showing how even a small amount of anthrax can cause devastating harm. His mailings were warnings and promotional materials for his book about the subject. Because they don't constitute true threats under the First Amendment, his speech is protected and his convictions must be reversed. When the Court looks at whether his speech is protected under the First Amendment, I want to start with the subjective test, which this Court ---- Kennedy, it might help if you separated your arguments between threats and hoax, because you were saying that it doesn't contract, doesn't constitute a threat. It constitutes a warning. But that has a lot to do with the threat counts but not a lot to do with the hoax counts. Well, then let me start with the hoax counts. I think that Keyser argued in the district court that all his speech, all his mailings were protected under the First Amendment. And for his speech to be unprotected, it would have to fall in an exception to a First Amendment protected speech. The true threat is one potential exception. The government has argued that with respect to the hoax counts, it's more akin to falling into the exception for shouting fire in a crowded theater. I don't think that this is a case where we're really arguing like the Alvarez case before the Supreme Court whether false speech is protected or not. Our argument is that Mr. Keyser's speech was not false, that in context a reasonable person would see it as not being actual anthrax in his mailings. But I also don't think it falls within to the exception of shouting fire in a crowded theater because the mailings are much different. First of all, shouting fire in a crowded theater falsely has no societal value whatsoever. Mr. Keyser's mailings constitute kind of pure almost political speech criticizing the government and Department of Homeland Security. Second, in a crowded theater, it's the instantaneous shouting of the word fire that in effect causes the danger because there's no opportunity to determine whether or not there's a real fire before people panic and go out the door. In this case, when there's mailings and in the context, it's clear that there wasn't any real danger. In terms of the threat counts and the intent to threaten, under Virginia v. Black, which this Court has held is the applicable subjective standard in U.S. v. Castle and Baghdarsian, the question is whether Mr. Keyser subjectively intended to threaten with respect to his mailings. And I think the evidence is not there that he subjectively intended to threaten. Well, as I read the evidence, he testified he wanted people to be concerned about the danger that society was in. He knew some of the recipients might be briefly concerned that they'd received real anthrax threats. An agent testified that your client told him he wanted to cause concern by sending the envelopes, and your client was aware that in 2001 anthrax mailings targeted government offices and caused deaths. And that is the evidence in my book, given that we had a trial here, that there is sufficient evidence to determine the subjective test. I think under that, that's... The jury decided based on this evidence. And I think, first of all, the standard should be more of an independent review under the Court's First Amendment cases, like Planned Parenthood. So the jury's decision does not control the issue of whether or not... So you're not saying there's insufficient evidence. You're just saying you should look in here and find that this isn't protected or that this is protected speech? I am arguing that there was insufficient evidence of his subjective intent. Oh, that's what I thought you were arguing. That's why I didn't understand your answer. Well, I'm arguing under both standards. But even if the insufficiency of the evidence standard applies, the evidence was insufficient. The evidence that the Court has summarized, I think, in general, would show that Mr. Kaiser at most intended to briefly startle or surprise someone when they saw the word anthrax sample in the mailings. But after that, that they would read or they would look at the materials in the mailings and realize that it was part of a promotional book. If I yelled the word boo at you or anthrax, you might be startled or even frightened. But that doesn't mean that there was any...  Well, I'm arguing that there was a little bit different than anthrax. Yes. Does the statute require a threat that causes fear that lasts over a certain defined period of time? No. But it requires an intent to threaten. Well, I mean, he's intending to cause people to have a sense that, oh, my God, I'm in danger here. How is that not an intent to threaten? I don't believe he felt any kind of intent to threaten. There might have been an intent to startle, to be provocative mailings. If you look at... Oh, it wasn't a threat, the device he was using to get their attention. I mean, he had the discussion with the 2007, with the previous episode. He understood the reaction that people perceived his previous mailing as being, I'd use the word threatening, but as something that attracted their attention. And he sent an e-mail to his sister indicating he knew something might be happening here. How is that not evidence that supports the proposition he knew he was going to have this impact on people? Well, the jury acquitted on the 2007 mailings. No, but that gave him knowledge. It gave him a sense of the next time around, he understood how people would react. Right. And he modified his mailings to make it less frightening. And he used, instead of a can, a vitamin aerosol can with the word anthrax, he used a sugar packet that was completely closed and said anthrax sample. Now, the big differences between like the 2001 anthrax attacks or even like the court's Castagena case is that there is no threatening language in any of the mailings, and the packet was entirely open. Other than anthrax sample. Well, the packet was. If it said sugar package, you wouldn't have a problem now, would we? But in context, I think a reasonable person and Mr. Kaiser, I'm arguing both apply, that would not see it as an actual anthrax. It's different than if a case where there was loose powder or white powdery substance in the material where there was threatening language elsewhere. Well, they did have an orange and blank biohazard symbol there as well, did they not? Yes. But if you look at it. And if you had come into the courthouse today with one of these in your pocket and you put it into the container when you went by the CSOs, do you think they would have looked at it and said, hmm, that must be sugar. Let's wave him by. If it was also with a photo of Colin Powell and an introduction to his book. Okay. If you had that whole thing in your pocket because you're going to show it to us today, the actual object, and you put that in the basket to go to the machine and the court security officer looked down at it, do you think he'd wave you right on by or would he think, ooh, this is something we need to look at? Yes, I think he would see it as a prop to the materials. This is one of the exhibits. A prop to what materials? To his anthrax shotgun alterer by Mark Kaiser. It says, visit the website for the introduction. But you're missing the question. Do you think if you'd have thrown that in the basket this morning without saying anything, that you'd have been let go without any question? Well, it's a different question is whether they might question me. I mean, I'm not saying they shouldn't maybe potentially investigate or they could have investigated Mr. Kaiser. But the question is the question he asked you. Well, and it's a different standard. But the point is I'm not so sure that somebody looking at it, the reasonable  I mean, we have to look at both sides. So it doesn't really make sense that he would be sending real anthrax if he wanted people to read his book. But nobody knows that. I mean, nobody knows that until you try to go through the details behind it. Frankly, if I see the package that says anthrax and the big letters titling his book, I'll run for the other room. I'm not going to read the fine print or try to pursue it any more closely. There's not really evidence that the majority of people looked at it that way. There were a number of people who did. Well, the jury looked at it that way. Well, I mean, the jury acquitted on eight of 11 counts. They had five days of deliberation. It was a very close call. And it may have been So they may have been a reasonable group. I mean, they parsed through the evidence pretty good. Or they may have been confused by the jury instructions, which is my second issue. But, you know, in terms of the First Amendment issue, these are the mailings to the Starbucks and McDonald's. It actually says, By Mark Kaiser, as the title of his book, with Colin Powell on it. And it has a two-page introduction of his book. And it says, Visit the website for the introduction. And the mailing to the congressman, George Radinovich, also says, Mark Kaiser, Amtrak, Schock and Alterra. And it has right underneath it, copyright, all rights protected, on the Government Exhibit 6.2. In this context, when the sugar packet is attached to it, I think there's a we have a better argument that it was a prop. And I think it's important to note that the objective is to use and to threaten people. And subjectively, he thought of that. He didn't think it would intend to threaten people. And also on the objective of You just think Congressman Radinovich's staff is a little bit supersensitive? Well, I mean, like I said, he sent 120 packages. Well, I didn't ask what he sent. Congressman Radinovich got this stuff. The staffers opened it, knew of the prior threats to the congressman, had been briefed on serious suspicious packages, ran, called the Modesto police. The trucks came. The ambulances came. Two went to the hospital. They were just supersensitive. I think she is unusually sensitive. And like I said, there was lots of other evidence. A lot of people saw it, read the same thing, tossed it in the garbage. Some of them saw something in the TV or in the newspaper and then later on reported it to the FBI. Let me briefly talk about the jury instruction issues. Essentially two arguments here. One is that the court failed to give adequate guidance as to the reasonable person standard and then also erred in failing to give the defense's proposed theory of the defense instruction. The jury instructions didn't give any guidance to the jury that they're supposed to look at the context and the circumstances, all the circumstances in determining whether or not a reasonable person would believe it was expression, serious expression of a threat. The district court did properly instruct the jury they had to find specific intent, didn't they? Yes. The jury was instructed both on specific intent as well as on the objective reasonable person standard. The district court and both parties agreed that the court, the jury should be instructed as both under the subjective intent standard as well as objectively. Correct. Because he didn't know which standard we had. It does seem like sometimes it's a moving target. So he tried to do both, right? Well, I think I'm He said it's not necessarily the persons to whom the information was conveyed may or may not be objectively reasonable perf people. That's what he instructed on the 1038 hoax counts, not on the threats counts. But he didn't say the defense was asking for instruction that it's supposed to look at the context and the circumstances.  He said it's supposed to look under the full context and circumstances and that there would be an ordinary person's reaction. And he didn't give any further instruction. I'm going to reserve my remaining time. He did use the word circumstances. I mean, it seemed to me the objection was just that he didn't use the word context. Is there a difference? I believe he didn't even use circumstances. The persons to whom the information was conveyed may or may not be reasonable people. Well, both the threat and hoax instructions talked about communications made under circumstances in which a reasonable person would foresee. Well, but that's, I mean, that's a little bit different. That does describe the standard. But when they describe to how you determine whether a reasonable person, I don't think that's enough guidance, is my argument. Thank you. Thank you, counsel. Good morning. May it please the Court. My name is Jean Hobler. I represent the United States. I'd like to address some of the arguments just raised by Mr. Ballas. He started out by stating that this was about warnings, not threats. I want to be very clear that the charges on which we obtained convictions in this case were two of the gift card mailings and the CD. The CD did not contain Mr. Kaiser's book. The testimony at trial was that the CD contained a summary of Mr. Kaiser's book. 1038 is not a false speech. Or is it? Mr. Ballas. What was the threat? The threat in this case I think would very much focus on the anthrax sample. With the biohazard symbol, with the anthrax specifically stated there, any reasonable person receiving that would feel that they may be in danger of a biological toxin invading their body. Well, what did Mr. Kaiser threaten that he would do? Well, Your Honor, I think that it's not — I think that question assumes that the threat at issue in these statutes is a threat of future harm. Immediate harm is also a threat under the law. And when you receive a biological toxin, I think you are completely entitled to feel that your life, your person, is in immediate danger. If you place a bomb in a building and the bomb explodes, it's no longer a threat. Is that right? I think, in fact, that's very consistent with this — some of the concurrences in Havelock that a completed threat is no longer a threat. You can't have subjective intent to threaten when the action has already occurred. So if somebody had — But if you put the bomb in the building and you call the police and you say there's a bomb in the building, you're making a threat? Yes, Your Honor. I believe that is the state of the law. The threat that what? The threat is that there will be imminent harm to person and property. Well, that there is already imminent harm. Well, if — It's a report that a completed act can result in damage. Has the bomb blown up yet? Then the threat is that the bomb will go off and people will be harmed. But the act of the threatener has been, as you would call him, has been completed, right? I mean, he has done all he can do. For the — I mean, I imagine he would call back and reiterate that. If he said, I have a detonator and I'm going to press it, that would be a threat, right? I'm sorry. If somebody called and said, I have a detonator for a bomb that's in this particular building? That would be a threat. I'm going to detonate it. I would agree with that. And if he says there is a bomb in the building and it will go off no matter what? Then his intent is to communicate to people that they should be in fear of their lives. But it's not a threat that he's going to do anything. It's a statement that he has done something. The communication is intended to put people in fear of their lives. And it may or may not be true that there's a bomb in the building, correct? So now we have the difference between the 1038 statute and the threat statute is, in one instance, if it's false communication that there's a bomb in the building, then we have a 1038 situation, as well as an intention to call a particular person in that building and tell them, I just put a bomb in your building. That is very, very likely to cause fear in that person and anyone he communicates to that their lives are in imminent peril. That's a threat. I mean, I believe the de Vila case. Kennedy, you don't believe that a threat means that the person is going to do anything? I don't believe that the case law generally requires a threat of future harm. The threat statute can be imminent harm right now, this moment, or at some point in the future, I am going to come hurt you in some undefined way. I mean, the de Vila case, I think, was cited within some of the dissents in the Havelock case, and for expressly that proposition, that it does not have to be a threat of future harm. It can be placing somebody in the position of thinking their life is in imminent danger right now. Maybe that's why they were dissents. I'm sorry? Maybe that's why they were dissents. And that may be as well. But I mean, I don't think anybody was overruling de Vila. It is an out-of-circuit case, but I think there is not a case that has held that you cannot – it's not a threat if the person is immediately in harm when they receive the message. And incidentally, anthrax does not immediately kill you, and so one could absolutely and genuinely be afraid of the disease process and death. So your theory would be even if they had already taken the anthrax or – and you called him – he called a day later and said, I sent you anthrax. You've already taken it. This is going to cause you harm over the next week or two or month, and eventually you're going to die. That would be a threat. I believe so. I believe so.  It's a lot of interesting issues. I don't know if it's interesting to law professors or maybe law school classes. Mr. Ballas stated that he didn't think we were arguing about the Hoek statute so much because the information wasn't false because nobody would believe it. The fact that it wouldn't be believed, and I don't think that's the case here because I think the evidence shows that people did believe it, but the fact that it wouldn't be believed does not render the statement true. It is still a false statement. And Mr. Kaiser actually testified at trial that he knew it was false when he was sending it, both the anthrax vial in 2007 and the anthrax samples in 2008. So to suggest that we're not talking about false speech, I think, misstates the evidence and misstates the law in this case. Mr. Ballas also suggested that Mr. Kaiser modified his mailings to make them less threatening. I think that the evidence actually shows directly the opposite. Mr. Kaiser in 2007 contained or included a letter with his anthrax vial saying, if you would like to publish excerpts of my book, please contact me. In 2008, there were no letters. There were no explicit references to books. There was, in fact, something that was much more facially threatening than the 2007 mailing. Unless the Court has questions on any of the other issues, I would like to quote one thing from the record, and this is Mr. Kaiser's testimony. Question. Now you know from your research that anthrax has a very – that the word, the concept of anthrax, has a very dramatic effect on people. Answer. Yes, it does. And that's partly why, as you wrote in your book, that in the wake of an anthrax attack, there would be mass panic by people who were exposed, people who thought they were exposed, people who knew people who might be exposed, mass panic, right? Answer. Yes. That's consistent with his view, as stated in his book, that the media would sensationalize an anthrax attack and there would be mass panic. And he testified on direct that the book would have to be sensational. He testified that if people were frightened in ways that were not life-threatening, that was an appropriate cost in his view. And he testified that he expected a law enforcement response in 2008. You cannot expect a law enforcement response and also expect that your mailing did not make people scared. I'm some concerned about the last issue, about the calculating the guideline range on the four-level enhancement. It seemed to me, and I guess you'd agree, that the district court applied the enhancement to McDonald's and Starbucks statements under the rationale that 1B13A2 permitted the court to consider governmental costs for other statements. I would agree with that, Your Honor. Well, when I read 1B13A2, it seems that it only applies with respects to offenses of a character for which 3D12D would require the grouping. Your Honor. And so it seems to me since 876 and 1038 are covered by 2A6.1, and I'm only reading my notes because I'm not smart enough to put this all in my brain. It seems that 3D12D specifically excludes those from its list of offenses which require grouping. Your Honor, I had to go through the same convoluted analysis. I agree that it is not something that just sticks in your mind. And I would agree that on the state of the law as it is in terms of procedural error on sentencing, that this is not an issue that this Court can resolve. The district court absolutely considered all of the mailings in terms of applying that enhancement. So we probably ought to send it back? Do you really want me to say that? No, I don't want you to say that. I think you've said enough.  Just a couple of brief points. My position is that Mr. Kaiser's mailings does not constitute a false statement because it cannot be construed by a reasonable person as saying this is real anthrax. If he had said this is real anthrax, that's something different. But in the context where he says anthrax sample with his mailings and promotional materials, it's not a false statement because he's not. And with the sign of it being poison? The biohazard symbol with the mailings that a reasonable person would not believe that that is actual anthrax. I see. On the last or second to last point, opposing counsel stated where she read from Mr. Kaiser's testimony. Mr. Kaiser's testimony is that a real anthrax attack, as described in his book, would cause mass panic, and the mass panic would be more harmful than the actual anthrax itself. That's what he was trying to get the point across to real people. But he did not want to get, and he never testified that he expected his mailings would cause mass panic. Those are entirely two different things. In fact, he testified that while I think he did say, he testified he did not expect to be arrested, and he did not expect to cause panic. He had no idea of the reaction that it actually caused. Thank you.
judges: Reinhardt, Clifton, Smith